**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| ASHLEY NETTLES, individually and on behalf of similar situated persons, | |
| Plaintiff, | Case No.: 2:20-cv-10158-TGB-MJH |
| v. | Judge: Terrence G. Berg |
| MIDLAND FUNDING LLC and MIDLAND CREDIT MANAGEMENT, INC., | Magistrate Judge: Michael J. Hluchaniak |
| | Putative Class Action |
| Defendants. | |

## DEFENDANTS' MOTION TO COMPEL ARBITRATION

For the reasons stated more fully in the accompanying Brief in Support, which Defendants Midland Funding LLC and Midland Credit Management, Inc. ("Defendants") fully incorporate herein, Defendants request that this Court issue an Order requiring the issues in this case to be resolved in an arbitral forum on an individual basis.

Pursuant to Local Rule 7.1, counsel for Defendants informed Plaintiff's counsel of Defendants' intent to file this motion on June 19, 2020. Counsel for Plaintiff indicated that Plaintiff "does not concur with the motion."

| | |
|---|---|
| Dated: June 25, 2020 | By: /s/ *Theodore W. Seitz* |
| | Theodore W. Seitz (P60320) |
| | Kyle M. Asher (P80359) |
| | DYKEMA GOSSETT PLLC |
| | Capitol View Bldg. |
| | 201 Townsend Street, Suite 900 |
| | Lansing, Michigan 48933 |
| | Telephone: (517) 374-9100 |
| | TSeitz@dykema.com |
| | KAsher@dykema.com |
| | |
| | *Attorneys for Defendants* |

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

ASHLEY NETTLES, individually and on behalf of similar situated persons,

    Plaintiff,

v.

MIDLAND FUNDING LLC and MIDLAND CREDIT MANAGEMENT, INC.,

    Defendants.

Case No.: 2:20-cv-10158-TGB-MJH

Judge: Terrence G. Berg

Magistrate Judge: Michael J. Hluchaniak

Putative Class Action

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

## **CONCISE STATEMENT OF ISSUES PRESENTED**

Viewed with a presumption of arbitrability in mind, does Defendants' attempt to collect debt owed on Plaintiff's credit card account by sending her a garnishment form qualify as a "communication relating to her account," a "collection matter relating to her account," or "any other matter relating to her account," so as to fall within the scope of the Arbitration Clause?

        Defendants Answer:    Yes

        Plaintiff Answers:     No.

i

## **CONTROLLING OR MOST APPROPRIATE AUTHORITY**

In support of their Motion to Compel Arbitration, Defendants rely on the following authority, as well as the authority cited in their Brief in Support of Motion to Compel Arbitration:

- The Federal Arbitration Act, 9 U.S.C. § 1 et seq.

- The plain text of the Arbitration Clause that binds Plaintiff.

- *AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) ("[W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[an] order to arbitrate the particular grievance should not be denied unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'").

- *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) ("[C]ourts must enforce arbitration contracts according to their terms.").

- *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416 (2019) ("Parties may generally shape [arbitration] agreements to their liking . . . Whatever they settle on, the task for courts and arbitrators at bottom remains the same: to give effect to the intent of the parties.").

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

ii

**I.     Introduction**

When Plaintiff Ashley Nettles ("Nettles") signed up for and used a credit card in 2015, she became bound by a broadly drafted Arbitration Clause that allows Defendants Midland Funding LLC ("Midland") and Midland Credit Management, Inc. ("MCM") (together with Midland, the "Midland Defendants") to compel arbitration of, among other things, all "collection matters" and all "other matters" relating to her credit card account.

After Nettles failed to pay her credit card bill, a collection action was filed on Midland's behalf in Michigan's 17th District Court, at which time Nettles asserted as an affirmative defense that "There is in existence an agreement to arbitrate." The lawsuit was resolved when the parties entered into a consent judgment, which required Nettles to make payments in monthly installments. A garnishment form was then sent to Nettles in an attempt to collect those payments, which Nettles now alleges contained "false" information in violation of the Fair Debt Collection Practices Act ("FDCPA") and related state law.

Because the garnishment form was a "collection matter" relating to Nettles' credit card account, and would otherwise qualify as "any other matter" relating to her account, Midland now moves to enforce the plain terms of the parties' agreement and to compel arbitration.

**II.     Background**

   **A.     Nettles Signs Up for a Credit Card and Binds Herself to the Card's Arbitration Clause.**

Plaintiff Ashley Nettles signed up for a credit card account with Credit One Bank (the "Account") in October 2015. (Decl. of Michael Wiese (the "Wiese Decl.") at ¶¶ 5, 8, **Ex. 1**.) When she received the credit card in the mail, she also received a "VISA/Mastercard Cardholder

1

Agreement, Disclosure Statement and Arbitration Agreement" and, later, a Change in Terms[1] (collectively, the "Cardholder Agreement"). (Wiese Decl. ¶ 8; *see also* Cardholder Agreement, **Ex. 2**.) The Cardholder Agreement informed Nettles that, "[b]y requesting and receiving, signing or using your Card," she became bound by its terms. (Cardholder Agreement, p. 2.)

Nettles later used the Card, binding herself to its terms. (Wiese Decl. ¶ 10; *see also* Account Statement, **Ex. 3**.) Those terms included an Arbitration Clause, which can be summarized as follows:

> Binding on Successors and Assigns: In bold font and capital letters, the Arbitration Clause begins by stating, "Please read this provision of your Card Agreement carefully. It provides that either You or We can require that any controversy or dispute be resolved by binding arbitration." (Change in Terms, p. 5.) The term "We" is defined to include "Credit One Bank, N.A., its successors or assigns." (Cardholder Agreement, p. 2.)
>
> Agreement to Arbitrate: The Arbitration Clause goes on to state that "You and we agree that either you or we may, without the other's consent, require that any controversy or dispute between you and us (all of which are called 'claims'), be submitted to mandatory, binding arbitration." (Change in Terms, p. 5.) The arbitration "shall be governed by, and enforceable under, the Federal Arbitration Act (the 'FAA'), 9 U.S.C. § 1 et seq., and (to the extent State law is applicable), the State law governing this Agreement." (*Id.* at 5-6.)
>
> Scope of Arbitration Agreement: The Arbitration Clause is broadly drafted to sweep in "Claims" that "include, but are not limited to":
>
> - "[A]ny disclosures or other documents or communications relating to your account." (*Id.* at 6.)
>
> - "[B]illing, billing errors, credit reporting, the posting of transactions, payment or credits, or collection matters relating to your account." (*Id.*)
>
> - "[T]he application, enforceability or interpretation of the Card Agreement (except for this Arbitration Agreement)." (*Id.*)
>
> - "Claims based on . . . any contract, statute," or "theory of law . . ." (*Id.*)

---

[1] The Change in Terms are the last two pages of the Cardholder Agreement attached as Exhibit C to the Declaration of Michael Wiese. The page numbers referenced in the Change in Terms refer to the numbers at the bottom of the five columns on each page.

2

- "[A]nd any other matters relating to your account . . . or the resulting relationships between you and us. Any questions about what claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced." (*Id.*)

Survival: "This arbitration provision shall survive: (i) termination or changes in the Card Agreement, the account and the relationship between you and us concerning the account; . . . and (iii) any transfer or assignment of your account, or any amounts owed on your account, to any other person."  (*Id.* at p. 9.)

Class Action Waiver: Any claim that is arbitrated must be done so on an individual basis: "Notwithstanding anything else that may be in this arbitration provision or Agreement, no class action, private attorney general action or other representative action may be pursued in arbitration, nor may such action be pursued in court if any party has elected arbitration." (*Id.*)

Choice of Law: "This Agreement is governed by and interpreted in accordance with the laws applicable to national banks, and, where no such laws apply, by the laws of the State of Nevada, excluding the conflicts of law provisions thereof, regardless of your state of residence." (Cardholder Agreement, at p. 4.)

**B.   After Nettles Fails to Make Credit Card Payments, Her Debt is Charged Off, Sold, and Assigned to Midland.**

Nettles continued to use her credit card, and her balance began to build.  She made her last payment on the card in January 2016.  (Wiese Decl. ¶ 10; Account Statement, p. 4.)  At that time, she still had a balance of $340.97.  (*Id.*)  Over the next seven months, Nettles stopped making payments entirely and her balance continued to grow.  (Account Statement, pp. 5-10.)  Doubtful that it would ever receive payment, Credit One charged off Nettles' $601.97 balance on July 17, 2016.  (Wiese Decl. ¶ 10; Declaration of Sean Mulcahy (the "Mulcahy Decl.") ¶ 8, **Ex. 4**.)

Credit One then sold and assigned its "right, title, and interest in and to" to the Account to MHC Receivables, LLC on July 31, 2016.  (Wiese Decl. ¶ 6 and accompanying exhibit).  MHC Receivables later sold and assigned all of its "title and interest in and to" the Account to Sherman Originator III LLC on August 15, 2016.  (*Id.* at ¶ 7 and accompanying exhibit).  And Sherman then assigned "all right, title and interest in and to" the Account to Midland Funding on August 23,

3

2016.  (Mulcahy Decl. ¶¶ 3-9 and accompanying exhibits).  The Arbitration Clause survived each assignment, as the Agreement was binding between Nettles and "Credit One Bank, N.A., its successors or assigns."  (Cardholder Agreement at p. 2; *see also* Change in Terms at p. 9 ("[T]he arbitration provision shall survive: . . . any transfer or assignment of your account . . .").)

      **C.**    **Midland Funding Sues Nettles in State Court to Collect the Debt And, After Nettles Acknowledges the Existence of the Arbitration Agreement, the Parties Enter Into a Consent Judgment.**

Nettles alleges that, after the Account was assigned to Midland Funding, the law firm of Blatt, Hasenmiller, Leibsker & Moore LLC ("Blatt") sued on Midland's behalf to collect the $601.97 balance on her Account.  (Am. Compl. ¶ 19, ECF No. 1-2, PageID.28.)  Nettles filed an Answer to the state court lawsuit, where she asserted as an affirmative defense, "There is in existence an agreement to arbitrate."  (State Court Affirmative Defenses ¶ 2, **Ex. 5**.)

The lawsuit was resolved when the parties entered into a Consent Judgment, which required Nettles to pay $689.37 through monthly installments of $50.00.  (Am. Compl. ¶¶ 21-26.)  Nettles states that the "Judgment did not include any statutory interest," and that the "Judgment did not provide for the addition of any additional interest."  (*Id.* ¶¶ 24-26.)  Payments were automatically withdrawn from Nettles' bank account for three months, leaving her with a $539.37 balance due on the card.  (*Id.* ¶¶ 28-31.)  Blatt then stopped withdrawing payments "[f]or reasons unknown to Plaintiff."  (*Id.* ¶ 32.)

      **D.**    **A Garnishment Form and Letter Are Sent, Which, According to Nettles, Violate the FDCPA and Related State Law.**

Nettles alleges that, after Blatt stopped withdrawing payments, "Defendants" sent a state court garnishment to her attorney, which stated that Midland "received judgment against [Nettles] for: $776.77" and that "[t]he total amount of post judgment interest accrued to date is: $28.09."  (Am. Compl. ¶¶ 38, 39; Garnishment, ECF No. 1-2, PageID.40.)  In addition, in a separately-filed

4

action in the United States District Court for the Northern District of Illinois, Nettles alleged that MCM sent a letter (the "Letter") representing that Nettles had a current balance of $643.59 when, in reality, she only owed $539.37 on the debt. (*Nettles v. Midland Funding LLC*, Case No. 1:18-cv-07766 (N.D. Ill.), Compl. ¶ 37-38, attached as **Ex. 6**.)

### E. Nettles Sues the Midland Defendants in Illinois and in Michigan.

In response, Nettles filed a putative class action Complaint in the Northern District of Illinois alleging that the Midland Defendants' Letter was sent in violation of the Fair Debt Collection Practices Act because the Letter "seeks $104.22 . . . more than what [Nettles] owed" at the time the Letter was sent. (N.D. Ill. Compl. ¶ 45.) The Midland Defendants filed a Motion to Compel Arbitration before the Northern District of Illinois on February 5, 2019. (N.D. Ill. Docket No. 19, attached as **Ex. 7**.) That Court denied the Motion to Compel Arbitration on September 30, 2019. (N.D. Ill. Docket No. 45.) The Midland Defendants appealed that decision to the United States Court of Appeals for the Seventh Circuit on November 21, 2019, and oral argument was held on June 4, 2020.[2] A decision has yet to issue, and the district court proceedings have been stayed in the Northern District of Illinois pending the Seventh Circuit's decision. (N.D. Ill. Docket No. 52.)

With the action in the Northern District of Illinois stayed and on appeal, Nettles filed a separate action against the Midland Defendants in the Wayne County Circuit Court on December 4, 2019 that relates to the garnishment form. (Wayne County Docket, ECF No. 1-2, PageID.8.) She amended her putative class action complaint on December 26, 2019 and served the Midland

---

[2] On appeal, and for the first time, Plaintiff indicated her belief that she may lack Article III standing under Seventh Circuit law. (*See* Appellee Brief at p. 20 ("Plaintiff possibly lacks Article III standing as Midland's conduct regarding the subject form letter seeking an improper higher amount of money than what she owed under the Consent Judgment, at [sic] her receipt of that letter did not technically 'affect[] her in any way'").)

5

Defendants on January 2, 2020. (*Id.*) The Midland Defendants removed the case to this Court on January 22, 2020. (Notice of Removal, ECF No. 1.)

Nettles' Amended Complaint alleges that the Garnishment Form sent by "Defendants" violates the FDCPA and related state law[3] because the statements that Nettles owed $654.86 and that the amount of post-judgment interest was $28.9 were "false." (Am. Compl. ¶¶ 46-48, 62-64 ECF No. 1-2, PageID.31-33.) In addition, Nettles alleges that the Midland Defendants committed "fraud on the court" by intentionally misrepresenting the amount owed by Nettles on the garnishment form. (*Id.* ¶¶ 77-85.)

Following a telephonic hearing with this Court, the parties agreed to proceed to mediation to determine whether the matter could be resolved on an informal basis. (Stipulation and Order, ECF No. 11.) The Court then entered an Order staying the case pending mediation. (*Id.*) The Court's Order provided that, by engaging in mediation, "Defendants are not acting inconsistent with or waiving any alleged right to compel arbitration," and that "Defendants shall retain the same procedural posture as if they had filed a motion to compel arbitration on the date this stipulation was submitted to the Court, in the event that the mediation proves unsuccessful." (*Id.* at PageID.116.) The mediation proved unsuccessful, and Midland now moves to exercise its right to compel arbitration in this Court.

### III.   Argument

Nettles' Cardholder Agreement is "governed by, and enforceable under, the Federal Arbitration Act (the 'FAA'), 9 U.S.C. § 1 et seq., and (to the extent State law is applicable), the State law governing this Agreement." (Change in Terms, pp. 5-6.)

---

[3] The Michigan Regulation of Collection Practices Act ("MRCPA"), Mich. Comp. Laws § 445.252 (Am. Compl. ¶ 65), and the Michigan Occupational Code, Mich. Comp. Laws § 339.915 (Am. Compl. ¶ 66).

"The Federal Arbitration Act reflects the basic principles that 'arbitration is a matter of contract' and that contracts must be enforced 'according to their terms.'" *Blanton v. Domino's Pizza Franchising LLC*, __ F.3d __, 2020 U.S. App. LEXIS 18975, at *3-4 (6th Cir. June 17, 2020) (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). It was enacted in response to "judicial hostility to arbitration agreements" and codifies a "'liberal federal policy favoring arbitration.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

Consistent with this strong federal policy in favor of arbitration, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25. Also consistent with this policy, "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[an] order to arbitrate the particular grievance should not be denied unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (citation omitted). "Doubts should be resolved in favor of coverage," and this presumption in favor of arbitrability "is particularly applicable where," as here, "the clause is . . . broad . . ." *Id.*

Viewed with this presumption of arbitrability in mind, the Sixth Circuit applies a four-prong test to determine whether a motion to compel arbitration should be granted. "[F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder

7

of the proceedings pending arbitration." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). Each factor has been met here.

### A. As Nettles Herself Has Admitted, the Parties Agreed to Arbitrate.

As to the first prong, a valid arbitration agreement exists between Nettles and the Midland Defendants. Plaintiff herself said so when, in response to Midland's state court lawsuit, she raised the affirmative defense that "There is in existence an agreement to arbitrate." (**Ex. 5**.)

And for good reason. As explained above, after Nettles signed up for a credit card with Credit One Bank, she received a Card Agreement informing her that, "[b]y requesting and receiving, signing or using your Card," she became bound by its terms.[4] (Cardholder Agreement, p. 2.) Nettles used the card on numerous occasions, binding herself to its terms. (Wiese Decl. ¶ 10; *see also* Account Statement, **Ex. 3**.)

Those terms gave Credit One the option to "require that any controversy or dispute between you and us . . . be submitted to mandatory, binding arbitration." (Change in Terms, at pp. 5-6.) And when the rights to Plaintiff's Account were validly assigned to Midland (Wiese Decl. ¶¶ 6-7; Mulcahy Decl. ¶¶ 3-9), Midland obtained that same option to "require that any controversy or dispute between you and us . . . be submitted to mandatory, binding arbitration." (*See* Cardholder Agreement at p. 2 (explaining that the Agreement binds Nettles and "Credit One Bank, N.A., its

---

[4] This clause is valid under Nevada law, which applies to the Cardholder Agreement. *See Blanton*, 2020 U.S. App. LEXIS 18975, at *4 ("Usually, courts look to state law to interpret arbitration agreements."); Nev. Rev. Stat. Ann. § 97A.140(2) ("An issuer shall provide the cardholder with the terms and conditions that govern the use of the credit card, in writing, before or at the time of the receipt of the credit card. A cardholder shall be deemed to have accepted the written terms and conditions provided by the issuer upon subsequent actual use of the credit card."); *Charles v. Discover Bank*, No. A-15-725706-A, 2016 Nev. Dist. LEXIS 1450 (8th Dist. JD 2016) (holding that the cardmember agreement became valid when the cardholder used the account and made payments on the account).

8

successors or assigns"); Change in Terms, p. 9 ("[T]he arbitration provision shall survive: . . . any transfer or assignment of your account . . .").)

### B. Nettles' Claims Fall Within the Scope of the Arbitration Agreement.

The next question, then, is whether Nettles' FDCPA, MOC, MRCPA, and fraud on the court claims fall within the scope of the Arbitration Clause that Nettles is bound by. *Stout*, 228 F.3d at 714. The answer is yes.

The Arbitration Clause is broadly drafted to include: All "documents or communications relating to [the] account"; All "collection matters relating to [the] account"; "any other matters relating to [the] account . . . or the resulting relationships between" Nettles and the Midland Defendants; and "Claims based on . . . any contract, statute," or "theory of law." (Change in Terms, p. 6.) Nettles' Complaint in this case checks each of those boxes. Each of her claims arise from the Garnishment Form sent by Midland which, Plaintiff contends, contained knowingly false information. (*See* Am. Compl. ¶¶ 46-48 (FDCPA claim based on "false" information "in the garnishment"); *Id.* at ¶¶ 62-65, 67 (MRCPA claim based on "false" information "in the garnishment"); *Id.* at ¶¶ 62-64, 66 (MOC claim based on "inaccurate, misleading, untrue, or deceptive statement" in Garnishment Form); *Id.* at ¶¶ 79-81 (fraud on the court claim based on "intentionally . . . false representations [] on the statement in the garnishment").)

The Garnishment Form that this case is based on was sent to collect debt that was owed to Midland under the Consent Judgment entered into between the parties before Michigan's 17th District Court. And the Consent Judgment was agreed on as a mechanism for Nettles to pay debt that she owed on her Credit Card Account in monthly installments. Thus, it necessarily follows that Midland's attempt to collect debt that Nettles accrued on her Credit Card Account through sending the Garnishment Form was an attempt to collect payments owed on that Credit Card

9

Account. In other words, it was a "collection matter[] relating to [the] account" or "**any other matter[] relating to [the] account** . . . or the resulting relationships between" Nettles and Midland. (Change in Terms, at p. 6.) Moreover, Nettles' statutory and common law claims also qualify as claims based on "any theory of law" or "any contract. . . ." (*Id.*)

Because Nettles' claims fall within the scope of the broadly drafted arbitration clause, this Court should enforce the parties' intent and require the claims to be arbitrated.[5] *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) ("[C]ourts must enforce arbitration contracts according to their terms."); *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416 (2019) ("Parties may generally shape [arbitration] agreements to their liking . . . Whatever they settle on, the task for courts and arbitrators at bottom remains the same: to give effect to the intent of the parties.").

### C. Congress Intended FDCPA Claims to be Arbitrable.

Third, this Court must look to whether Congress intended for the "federal statutory claims . . . asserted . . . to be nonarbitrable." *Stout*, 228 F.3d at 714. "The burden is on the party opposing arbitration . . . to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 227 (1987). Plaintiff cannot meet this burden. As numerous courts have recognized, "Congress did not intend FDCPA claims to be non-arbitrable. Courts routinely permit arbitration of such claims." *Hodson*

---

[5] And even if there were any doubt as to whether Nettles' claims fall within the scope of the broadly-drafted Arbitration Clause, that doubt must be resolved in favor of arbitration. *Moses H. Cone*, 460 U.S. at 24-25 ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . ."); *Lamps Plus*, 139 S. Ct. at 1418 ("[W]e have repeatedly held that ambiguities about the scope of an arbitration agreement must be resolved in favor of arbitration."); *Simon v. Pfizer Inc.*, 398 F.3d 765, 775 (6th Cir. 2005) ("When faced with a broad arbitration clause, such as one covering *any* dispute arising out of an agreement, a court should follow the presumption of arbitration and resolve doubts in favor of arbitration.").

*v. Javitch, Block, & Rathbone, LLP*, 531 F. Supp. 2d 827, 831 (S.D. Ohio 2008); *see also, e.g.*, *Garcia v. Weltman, Weinberg & Reis Co.*, No. 2:13-cv-14362, 2014 U.S. Dist. LEXIS 59825, at *10 (E.D. Mich. Apr. 30, 2014) ("Congress did not intend for FDCPA claims to be nonarbitrable.").

### D. This Case Should be Stayed While Arbitration Proceeds on an Individual Basis.

Finally, "if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration." *Stout*, 228 F.3d at 714. Generally, "[t]he weight of authority clearly supports *dismissal* of the case when all of the issues raised in the district court must be submitted to arbitration." *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000) (citation omitted). The Midland Defendants recognize, however, that if Nettles requests a stay, dismissal may not be the proper remedy. *Hilton v. Midland Funding, LLC*, 687 F. App'x 515, 518 (6th Cir. 2017) (citing 9 U.S.C. § 3.)

### IV. Conclusion

For the reasons stated above, the Midland Defendants respectfully request that this Court grant Midland's Motion to Compel Arbitration, and either stay or dismiss this case.

Dated: June 25, 2020       By: /s/ *Theodore W. Seitz*
                                    Theodore W. Seitz (P60320)
                                    Kyle M. Asher (P80359)
                                    DYKEMA GOSSETT PLLC
                                    Capitol View Bldg.
                                    201 Townsend Street, Suite 900
                                    Lansing, Michigan 48933
                                    TSeitz@dykema.com
                                    KAsher@dykema.com
                                    *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2020, I electronically filed the foregoing with the Clerk of the Court using the electronic filing system, which will send notification of such filing to all counsel of record at their respective addresses as disclosed on the pleadings.

By: /s/ *Theodore W. Seitz*
Theodore W. Seitz (P60320)
*Attorney for Defendants*

Nettles (E.D. Mich.) - Motion to Compel Arbitration 4852-0146-6804 v.3.docx

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933