# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

ASHLEY NETTLES, individually and on behalf of similar situated persons,

    Plaintiff,

v.

MIDLAND FUNDING LLC and MIDLAND CREDIT MANAGEMENT, INC.,

    Defendants.

Case No.: 2:20-cv-10158-TGB-MJH

Judge: Terrence G. Berg

Magistrate Judge: Michael J. Hluchaniak

Putative Class Action

## **DEFENDANTS' RESPONSE TO ORDER TO SHOW CAUSE**

# BACKGROUND[1]

After Midland Funding ("Midland") was assigned the rights to a credit card debt owed by Plaintiff Ashley Nettles, a law firm sued on Midland's behalf to collect the balance on her Account. The lawsuit was resolved when the parties entered into a Consent Judgment, which required Nettles to pay the debt through monthly installments. Nettles has since filed two lawsuits arising from Defendants' attempts to collect the credit card debt she agreed to pay under the Consent Judgment's terms.

## I.  The Northern District of Illinois Action.

In the first case, Nettles alleged she received a "letter dated June 6, 2018" representing that she owed more than what her current balance actually was. In a later appeal brief, Nettles argued this letter caused her to suffer various injuries, but she acknowledged that "none of these potential harms are alleged in [the] Complaint," and that she did not "allege that she suffered any actual damages as a result of Midland's conduct." (Case No. 19-3327, Appellee Brief at 19, ECF No. 14 (7th Cir.).) Defendants filed a joint Motion to Compel Arbitration on February 5, 2019 in the Northern District of Illinois, and the Motion was fully briefed as of March 19, 2019. At the trial court level, no party raised the issue of standing.

Three months after briefing had concluded, however, the Seventh Circuit

---

[1] The Court's standing analysis takes the facts alleged in the complaint as true at the pleadings stage. *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 350 (6th Cir. 2016).

1

issued its opinion in *Casillas v. Madison Avenue Associates*, 926 F.3d 329 (7th Cir. 2019) (Barrett, J.). In the first sentence of that case, the Seventh Circuit laid out a simple rule for Article III standing in FDCPA cases: "no harm, no foul." *Id.* at 331. Applying this rule, the court found a plaintiff who received a debt-collection letter that "neglected to specify that [the plaintiff] had to communicate in writing to trigger" the FDCPA's protections lacked Article III standing, because this "violation of the statute did not harm" her. *Id.* at 332. The plaintiff "did not allege that she tried—or even planned to try—to dispute the debt," *id.*, nor did she allege the debt collector's "actions harmed or posed any real risk of harm to her interests under the Act . . . She complained only that her notice was missing some information that she did not suggest that she would ever have used," *id.* at 334. Put differently, she complained of "nothing more than a 'bare procedural violation.'" *Id.* at 334. This, the court held, was "insufficient for purposes of Article III." *Id.* at 339.

Notably, in so holding, the Seventh Circuit stated that "the Sixth Circuit sees things differently than we do" and that its opinion "create[d] a circuit split" with the Sixth Circuit's holding in *Macy v. GC Services, L.P.*, 897 F.3d 747 (6th Cir. 2018).

The Northern District of Illinois then denied Defendants' Motion to Compel Arbitration, and Defendants appealed. Defendants' appeal brief—like their briefing at the trial court—focused on arbitrability, rather than Article III standing. (Case No. 19-3327, Appellants Brief, ECF No. 10 (7th Cir.).) Nettles' appellee brief,

2

however, urged the Seventh Circuit to conduct an initial en banc proceeding to address standing, contending for the first time that "the four corners of the Complaint are possibly insufficient to establish Article III standing under" *Casillas*, and that *Casillas* was inconsistent with the Supreme Court's ruling in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). (Appellee Brief at 15.) The Seventh Circuit declined to overrule *Casillas*, and found that under the "no harm, no foul" standard, Nettles lacked standing. *Nettles v. Midland Funding*, 983 F.3d 896 (7th Cir. 2020). It explained that, "on appeal, [Nettles] admits that the letter didn't affect her at all and that her only injury is receipt of a noncompliant letter." *Id.* at 900. Because "Article III standing requires a concrete injury even in the context of a statutory violation," *id.* at 899, Nettles' Complaint was dismissed for lack of standing. As in *Casillas*, the Seventh Circuit stated its belief that, to the extent *Nettles* conflicts with *Macy*, the Sixth Circuit's opinion was "inconsistent with *Spokeo*." *Id.* at 900 n.3.

## II. <u>The Eastern District of Michigan Action.</u>

While Defendants' appeal was pending before the Seventh Circuit, Nettles filed this separate action on December 4, 2019. Defendants removed the case to this Court on January 22, 2020 (ECF No. 1)—about two months before Nettles raised the issue of standing for the first time before the Seventh Circuit. Similar to the letter she complained of before the Northern District of Illinois, Nettles alleges she received a state court garnishment from Midland that overstated the amount she

3

owed. (Compl. ¶¶ 32-35.) Nettles' claims all arise out of her receipt of this garnishment form. As with the Northern District of Illinois Complaint, the instant Amended Complaint is lacking in allegations that she was tangibly affected in any way. For instance, Nettles does not allege that she overpaid due to the alleged inaccuracies on the garnishment form. The only difference Defendants can ascertain is that here, Nettles makes a request for actual damages. (*Id.* ¶ 50(A).)

In Defendants' view, the allegations in the Northern District of Illinois and here are almost indistinguishable. In each case, Nettles claims she received a communication that overstated the amount of debt she owed. And in each case, her Complaint is lacking in detail as to how the receipt of that communication affected her. Plaintiff does not allege that she overpaid as a result of the communication. At best, Plaintiff alleges a threadbare allegation of "actual damages" with no factual support. The answer to this Court's question as to "whether the instant case must be dismissed for lack of jurisdiction" thus turns on distinctions in the Sixth Circuit's Article III standing case law as compared with the Seventh Circuit's.

## SIXTH CIRCUIT STANDING JURISPRUDENCE

*Donovan*: Most recently, the Sixth Circuit addressed a FDCPA plaintiff's Article III standing in *Donovan v. Firstcredit, Inc.*, __ F.3d __, 2020 U.S. App. LEXIS 39798 (6th Cir. 2020). In that case, the plaintiff received a debt collection letter that "came in an envelope with two transparent glassine windows on its face."

4

*Id.* at *2. The letter was smaller than the envelope and, depending on how the letter was situated inside the envelope, there was a risk that "anyone who caught a glimpse of Plaintiff's mail" might see language showing the plaintiff owed debt in violation of 15 U.S.C. § 1692f(8). *Id.* at *2-3. Although the plaintiff never expressly alleged that anyone saw the letter's language, and never identified any other tangible harm, the plaintiff argued that standing was "satisfied because someone *could have seen*" the language "and identified it as a debt-collection letter." *Id.* at *6 (emphasis added). The court agreed. It explained that, given the letter's language, the risk alone "implicates a core concern animating the FDCPA—the invasion of privacy."[2] *Id.* at *7. And it explained further that this privacy interest is a "harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* at *8. "Thus, [plaintiff's] allegation that FirstCredit violated § 1692f(8) 'is sufficient in and of itself to constitute concrete injury' without the further allegation of an 'additional harm beyond the one Congress has identified.'" *Id.*

*Macy*: This holding is in line with *Macy*. There, the plaintiffs received a letter that failed to inform them that the debt collector "was obligated to provide . . . additional debt and creditor information only if Plaintiffs disputed their debts *in writing*." *Id.* at 751. As in *Donovan*, the plaintiffs never alleged the letters caused

---

[2] This holding suggests that, if the letter's visible language was benign and did not implicate privacy interests, standing would be lacking.

5

tangible harm. Instead, they identified hypothetical harm that could occur to a hypothetical plaintiff based on this misinformation. *Id.* at 758 (summarizing allegations in complaint, and noting that "Plaintiffs allege a risk of harm . . . namely, the possibility of an unintentional waiver of FDCPA's debt-validation rights[.]").

The court rejected the argument that standing was lacking because "its failure to include the in-writing requirement never materialized into actual harm," noting that "Plaintiffs may satisfy the concreteness prong of the injury-in-fact requirement . . . by alleging that GC's purported FDCPA violations created a material risk of harm to a congressionally recognized interest." *Id.* at 759. It further found that including false information in a collection letter "may cause an individual 'to lose the very . . . rights that the law affords him" and, thus, the plaintiffs were "not required to allege 'any additional harm.'" *Id.* The defendant's "claim that Plaintiffs have not alleged a concrete injury because they did not identify actual harm stemming from GC's defective notices fails." *Id.* at 759. As *Casillas* characterized it, "*Macy* didn't require the plaintiffs to allege a risk of harm to themselves," and is thus "inconsistent with . . . *Spokeo*." 926 F.3d at 336.

*Hagy*: On the other end of the spectrum, the Sixth Circuit has issued opinions that more closely align with *Casillas* and *Nettles*. Take first *Hagy v. Demers & Adams*, 882 F.3d 616 (6th Cir. 2018). There, a debt collection letter was sent informing the plaintiff he was not required to make further payments on his debt.

6

*Id.* at 618. The debt collector later "began calling the Hagys to collect the debt that they no longer owed" and, after the plaintiff complained, the debt collector "realized it had made a mistake and agreed that the Hagys owed nothing more." *Id.* at 619. The plaintiff later sued because the initial letter failed to disclose that it was a "communication . . . from a debt collector" as 15 U.S.C. § 1692e(11) requires. *Id.* Although this "letter failed to include the required disclosure," *id.* at 620-21, the court still found a lack of standing because "no one plausibly argue[d] (or even allege[d]) that the Hagys suffered an actual injury and damages from the letter," *id.* at 621. It involved only a procedural violation without any accompanying harm. *Id.* As in *Casillas* (and unlike in *Macy* and *Donovan*), at no time did the court in *Hagy* look in detail to the "risk of harm" that could have occurred if the same provision of the FDCPA was violated at some other time, or actual harm the plaintiff could have (but did not) incurred. It focused only on what actually happened to the plaintiff.

*Buchholz*: Along these same lines, in *Buchholz v. Tanick*, 946 F.3d 855 (6th Cir. 2020), the court addressed a complaint about two debt collection letters that appeared on law firm letterhead, informed the plaintiff the law firm was acting as a debt collector, and allegedly made the plaintiff "feel anxious and fear that [the law firm] would sue him if he did not promptly pay." *Id.* at 859. The plaintiff alleged both that the anxiety he experienced from reading the letter, and the "FDCPA violation, by itself" satisfied Article III's injury-in-fact requirement. *Id.* at 863.

7

The court made clear it was "skeptical" about whether a plaintiff who does not "allege anything other than anxiety" has suffered an injury in fact, but did not ultimately answer the question. That's because the plaintiff's anxiety was due to a future, hypothetical action the law firm *could* take—suing him. *Id.* at 865. The court cited to the Supreme Court's opinion in *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013), which made clear "that the fear of a future harm is not an injury in fact unless the future harm is 'certainly impending.'" *Id.* The risk of harm identified in *Buchholz*—the "threat of litigation"—was not "certainly impending" because the plaintiff "fear[ed] only what might happen *if* he does not pay. So far as we know, Buchholz might decide to pay his debts, warding off any prospect of litigation. Because Buchholz has neither alleged that MNT has threatened to sue him nor that he refuses to pay his debts, we cannot infer that litigation is 'certainly impending.'" *Id.* at 865. Thus, the plaintiff did not suffer an injury-in-fact.

## **ANALYSIS**

This Court's Order asked the parties to "submit briefing . . . addressing the effect of the Seventh Circuit's decision in *Nettles*" on whether this "case must [also] be dismissed for lack of jurisdiction." (ECF No. 19.) In short, the Seventh Circuit's opinion does not have a significant effect on this Court's jurisdiction. While the Seventh Circuit has a bright-line, "no harm, no foul" standard, as *Casillas* and *Nettles* recognized, the Sixth Circuit has not explicitly adopted that standard. Rather,

8

the Sixth Circuit's approach is more nuanced and, consequently, less clear.

Still, because this Court has an independent obligation to ensure its jurisdiction, Defendants offer a brief word on how the Amended Complaint fits under the Sixth Circuit's framework. In Defendants' view, there is a clear analytical divergence between *Casillas*, *Hagy*, and *Buchholz*, on the one hand, and *Macy* and *Donovan* on the other, which splits at the "risk of harm" analysis. *Macy* and *Donovan* could be read to confer standing every time a procedural violation of the FDCPA occurs, so long as that violation could, hypothetically, have presented a "risk of" an actual injury-in-fact. In *Macy*, even though no harm resulted, it was enough that the FDCPA violation could have led to "the *possibility* of" harm under the risk of harm framework. *Id.* at 758 (emphasis added). In *Donovan*, even though no harm resulted, it was enough that the FDCPA violation could have implicated privacy interests under the risk of harm framework. *Id* at *7-9.

In *Casillas*, *Hagy*, and *Buchholz*, however, a hypothetical risk of harm was insufficient. Unless the statutory violation (1) actually caused an injury-in-fact, or (2) presented a risk of "future harm" that "is certainly impending," no standing exists. Defendants maintain these cases are better reasoned. Whether or not a statutory violation could have hypothetically caused a plaintiff to suffer an injury-in-fact, what should matter is whether the statutory violation actually caused that injury, or whether the statutory violation presents an "imminent risk" of *future harm*

9

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

(rather than an unrealized risk of past harm). As Judge Leitman put it (before *Macy* was decided), under *Clapper*, "the risk-based standing inquiry is *forward* looking—at the time of suit, the plaintiff must face a 'substantial risk that the harm *will* occur.'" *Newman v. Encore Capital Grp.*, 2017 U.S. Dist. LEXIS 128592, at *20 (E.D. Mich. Aug. 14, 2017) (emphasis in *Newman*).[3] To hold otherwise could allow for federal jurisdiction in virtually every situation that a plaintiff can conjure up a hypothetical scenario that could have (but didn't) cause them to suffer an injury-in-fact.

In conclusion, while Defendants maintain that *Casillas*, *Hagy*, and *Buchholz* are best reasoned, they cannot represent that the law in the Sixth Circuit is clear. If this Court were to follow *Macy*'s reasoning—which implies that false information in a debt collection letter can sometimes, on its own, confer Article III standing—a finding that Nettles has standing would not be out of the realm of possibilities under the risk of harm framework. If, however, the Court were to follow the analytical framework in *Casillas*, *Hagy*, *Buchholz*, and *Newman*, Defendants maintain that standing would be lacking because (1) there is no allegation that Nettles suffered an actual injury due to the receipt of the garnishment form; and (2) there is no "imminent risk" of *future harm* stemming from the garnishment form.

---

[3] The Sixth Circuit also indicated in a FCRA case that a "material risk of harm . . . may establish standing," but "the 'threatened injury must be *certainly impending* to constitute injury in fact.'" *Huff v. Telecheck Servs.*, 923 F.3d 458, 463-64 (6th Cir. 2019). When there is no "lingering risk" of harm, there is no concrete injury. *Id.*

10

Date: February 19, 2021		By: */s/ Theodore W. Seitz*
Theodore W. Seitz (P60320)
Kyle M. Asher (P80359)

### **CERTIFICATE OF SERVICE**

I hereby certify that on February 19, 2021, I electronically filed the foregoing with the Clerk of the Court using the electronic filing system, which will send notification of such filing to all counsel of record at their respective addresses as disclosed on the pleadings.

By: /s/ *Theodore W. Seitz*
Theodore W. Seitz (P60320)
*Attorneys for Defendants*

097356.000671 4840-1202-6844.1