UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **ASHLEY NETTLES**, | 2:20-CV-10158-TGB-MJH |
| Plaintiff, | HON. TERRENCE G. BERG |
| v. | |
| **MIDLAND FUNDING LLC, ET AL.**, | **ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION (ECF NO. 13)** |
| Defendants. | |

In 2015 Plaintiff Ashley Nettles signed up for a credit card account with Credit One Bank. After Plaintiff failed to make the credit card payments, her debt was sold off to Defendants Midland Funding LLC and Midland Credit Management, Inc. ("Defendant Midland"). The parties later entered into a consent judgment, which required Plaintiff Nettles to pay the agreed-upon debt in monthly installments. After automatic withdrawal of the monthly payments stopped (for reasons that are not explained in the record), Plaintiff alleges that Defendant Midland sent Plaintiff's counsel a state court garnishment letter which overstated the amount of debt she owed. Plaintiff Nettles brought this action on behalf of herself and a class of similarly situated persons originally in state court, but Defendants removed it to this Court. The complaint alleges that the Defendant Midland violated the Fair Debt Collection Practices Act ("FDCPA") and state law.

This case now comes before the Court on Defendant Midland's motion to compel arbitration. ECF No. 13. For the reasons stated below, Defendant's motion to compel arbitration is **GRANTED**.

## I.      BACKGROUND

In October of 2015, Plaintiff Ashley Nettles signed up for a credit card account with Credit One Bank. ECF No. 13, PageID.125. After Plaintiff Nettles defaulted on the credit card account, Credit One Bank sold and assigned its right to the debt to non-party MHC Receivables, LLC. ECF No. 13, PageID.127. MHC Receivables then sold and assigned all of its titles and interests in the account to non-party Sherman Originator III LLC. On August 23, 2016, Sherman sold and assigned its right to the account and the debt to Defendant Midland Funding. ECF No. 13, PageID.126-27. Defendant Midland then brought suit against Plaintiff Nettles in state court to collect the balance on her account. The parties entered into a consent judgment, which resolved the state court lawsuit. ECF No. 1-2, PageID.15. Plaintiff alleges that according to the consent judgment: (1) the amount was for a total of $689.37, (2) neither statutory interest nor any other additional interest was included, and (3) Nettles was to pay $50 per month towards the judgment beginning on August 1, 2017. ECF No. 1-2, PageID.15. Arrangements were made so that the $50 owed each month was automatically withdrawn from Plaintiff Nettles's bank account.

Plaintiff alleges that three payments were automatically withdrawn from her account until Defendant Midland's law firm went out of business and the automatic withdrawals stopped. At this point, Plaintiff Nettles contends she owed only $539.67. ECF No. 1-2, PageID.16. However, Plaintiff's counsel received a state garnishment letter which stated:

  (1)   The consent judgment against Plaintiff was for $776.77;
  (2)   To date, the total amount of post-judgment interest accrued was $28.09; and
  (3)   The amount of the unsatisfied judgment now due was $654.86.

Plaintiff Nettles alleges that each of these statements are false. As a result of the receipt of the state garnishment letter, Plaintiff Nettles brought this class action lawsuit suit under the Fair Debt Collection Practices Act and state collection laws.

On June 25, 2020, Defendant Midland moved to compel arbitration in accordance with a provision in the credit-card agreement, which contains an arbitration provision for any dispute relating to the account. ECF No. 13. However, before reaching the merits of Defendant's motion to compel arbitration, the Court must first determine whether Plaintiff's allegation satisfy the elements of standing. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009) ("[I]t is well established that the court has an independent obligation to assure that standing exists.").

## II.   STANDING

### a. Seventh Circuit's Decision in *Nettles I*

3

In addition to the complaint currently before this Court, Plaintiff Nettles also filed a lawsuit in the Northern District of Illinois alleging that the Defendant Midland's collection letter violated the FDCPA. *Nettles v. Blatt, Hasenmiller, Leibsker & Moore LLC*, No. 18-cv-7766, 2019 WL 4750297 (N.D. Ill. Sept. 30, 2019) (hereafter "*Nettles I*"). As was done here, Defendant Midland moved to compel arbitration under the provisions of the credit-card agreement. The district judge denied the motion after concluding that the arbitration clause did not cover the claim at issue. Defendant Midland appealed the decision to the Seventh Circuit. This Court stayed the current case pending a status report from the parties regarding the Seventh Circuit's decision.

In an opinion issued on December 21, 2020, the Seventh Circuit determined that there was a jurisdictional defect which prevented the court from reaching the arbitration question. *Nettles v. Midland Funding LLC*, 983 F.3d 896, 898 (7th Cir. 2020). Specifically, the court held that Plaintiff Nettles lacked Article III standing because she failed to adequately plead an injury from the statutory violations. The court found that Nettles failed to allege a concrete injury because her complaint did not "allege that the statutory violations harmed her in any way or created any appreciable risk of harm to her." *Id.* at 900.

In drawing this conclusion, the Seventh Circuit relied on two of its previous decisions, *Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060 (7th Cir. 2020) and *Casillas v. Madison Avenue Assocs., Inc.*, 926 F.3d

329 (7th Cir. 2019), which applied the Supreme Court's holding in *Spokeo, Inc. v. Robins* to claims alleging violations of the FDCPA. In *Casillas*, the defendant debt collector sent communications to the plaintiff which included notification of the plaintiff's right to dispute the debt and demand identification of the original creditor. 926 F.3d at 332. However, the defendant debt collector failed to notify the plaintiff that if she wished to exercise these statutory rights, she must do so "in writing" as required by the FDCPA. The plaintiff brought an action against the debt collecting, alleging that they violated §1692(g)[1] when they failed to include the required notice in writing. However, plaintiff failed to allege any injury other than the "incomplete letter." *Id*. at 333. The Seventh Circuit determined that the plaintiff lacked standing because she only alleged a "bare procedural violation" and failed to identify any way "that the violation harmed or 'presented an 'appreciable risk of harm.'" *Id*. at 333. As the Seventh Circuit held, "[i]t is not enough that the omission risked harming *someone*—it must have risked harm to the plaintiffs." *Id*. at 336. (emphasis in original).

Critically, the dissent in *Casillas* noted that with regard to what constitutes standing under the FDCPA, the Sixth Circuit "sees things differently than we do." 926 F.3d at 335. Chief Judge Wood's dissent expounds on the conflict:

---

[1] Section 1692(g) outlines procedural obligations that debt collectors must follow when notifying consumers of statutory their statutory rights.

As our panel sees this case, *Casillas* founders on the first criterion: actual injury. But the plot thickens when we look more particularly at the violation she asserted: Madison's failure to warn her, as required by 15 U.S.C. § 1692g, that a dispute over the debt or a request for information about the original creditor is ineffective unless it is made in writing. The panel regards that omission as a "bare procedural injury" and thus not one that can support standing under *Spokeo, Inc. v. Robins*, —— U.S. ——, 136 S. Ct. 1540, 1549 (2016). In so concluding, this court has created a conflict with the Sixth Circuit, which held otherwise in *Macy v. GC Servs. Ltd. P'ship*, 897 F.3d 747 (6th Cir. 2018), on materially indistinguishable facts.

*Casillas*, 926 F.3d at 339-40 (Wood, D., dissenting).

Following the decision in *Nettles v. Midland Funding LLC*, parties in the present case filed a joint status report, which noted that the Seventh Circuit did not reach the merits of the question of arbitrability, but instead found that Nettles lacked Article III standing. ECF No. 16, PageID.266. The joint status report requested that Defendants be required to "either show cause why [they] believe that there is jurisdiction under Article III here or move to dismiss this case." *Id*. This Court entered an order to show cause and requested that each party address the effect, if any, of the Seventh Circuit's decision on the instant case and whether the instant case should be dismissed for lack of jurisdiction. Having reviewed the parties' briefing and the case law in both the Sixth and Seventh Circuits, the Court now turns to the question of standing in this present case.

### b. Analysis

6

In response to the show cause order, Plaintiff argues that her complaint has satisfied Article III standing under the Sixth Circuit's decision in *Macy*. ECF No. 21, PageID.346. In particular, Plaintiff contends that Defendant violated §§ 1692(e), 1692(f) when she received a state garnishment that overstated the amount Plaintiff owed. Defendant Midland, however, argues that the Sixth Circuit law in this area is less than clear. ECF No. 20, PageID.342. If this Court were to follow the reasoning outlined in *Macy*, Defendant concedes that it would be possible to determine that Plaintiff has standing. But, if the Court followed the reasoning outlined in another set of Sixth Circuit cases (particularly *Hagy v. Demers & Adams*, 882 F.3d 616 (6th Cir. 2018) and *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855 (6th Cir. 2020)), Defendant maintains that Plaintiff would lack standing because: "(1) there is no allegation that Nettles suffered an actual injury due to the receipt of the garnishment form; and (2) there is no 'imminent risk' of future harm stemming from the garnishment form." ECF No. 20, PageID.343. Having evaluated each parties' briefing and the case law in both the Sixth and Seventh Circuits, the Court finds that Plaintiff Nettles does have Article III standing for the reasons discussed below.

The doctrine of standing limits the "category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo*, 136 S. Ct. at 1547. Standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly

7

traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*. (referencing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61; *Friends of the Earth Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)). The plaintiff bears the burden of establishing these elements and must allege facts which clearly demonstrate each element. *Id*.

The question in the present case concerns the first of the three elements of standing: injury in fact. An injury in fact includes two sub-elements: particularization and concreteness. *Spokeo*, 136 S. Ct. at 1548. To be "particularized" an injury must impact the plaintiff in a "personal and individual way." *Lujan*, 504 U.S. at 560, n.1. An injury is concrete if it is "real and not abstract." *Spokeo*, 136 S. Ct. at 1548 (internal punctation and quotations marks omitted). While an injury must "actually exist" to be concrete; "[c]oncrete' is not . . . necessarily synonymous with 'tangible'" and "intangible injuries can nevertheless be concrete." *Id*. at 1549.

In certain instances, a statutory violation "is sufficient in and of itself to constitute concrete injury." *Macy*, 897 F.3d at 756. *See also Buchholz*, 946 F.3d at 862. While it is insufficient to allege a "bare procedural violation" of the statute, the concreteness prong of the injury-in-fact requirement may be satisfied if the purported violation "created a material risk of harm to a congressionally recognized interest." *Id*. at 759. *See also Donovan v. FirstCredit, Inc.*, 983 F.3d 246, 251 (6th Cir. 2020).

8

In sum, "if the plaintiff alleges a violation of a procedural right that protects a concrete interest, the plaintiff 'need not allege any additional harm beyond the one Congress has identified.'" *Id*. at 868 (quoting *Spokeo*, 136 S. Ct. at 1549)

Plaintiff's complaint alleges that Defendant Midland Funding violated the FDCPA when it sent Plaintiff a state court garnishment letter which incorrectly stated the (1) total amount of the July 18, 2017 judgment; (2) total amount of post-judgment interest that had accrued to date; and (3) total amount of the unsatisfied judgment (including interest and costs). ECF No. 1-2, PageID.16. Plaintiff alleges that the incorrect statements in the garnishment letter violated §1692(f)'s prohibition on the collection of an amount not "expressly authorized by the agreement creating the debt or permitted by law" and §1692(e)'s prohibition on a debt collector using "deceptive means to collect or attempt to collect debt." Specifically, Defendant Midland allegedly violated the statute when it attempted to collect an amount that differed from the amount outlined in the consent agreement. 15 U.S.C.A. §1692(f)(1) (West). By claiming that the garnishment letter supported collection of a higher amount than Plaintiff owed, Defendant allegedly made a "false representation of . . . the character, amount, [and] legal status" of the debt and "use[d] . . . false representation or deceptive means to . . . attempt to collect" the debt. 15 U.S.C.A. § 1692(e)(2)(A), (10) (West); ECF No. 1-2, PageID.16-17.

While injury in fact is composed of two elements, only the element of concreteness is in dispute here. As a result of these violations, Plaintiff asserts that she experienced concrete harm in the form of (1) Defendants "knowingly attempting" to collect more money from Plaintiff than she legally owed, and (2) financial harm in that Plaintiff had to hire an attorney to challenge the allegedly false statements contained in the garnishment "or that wrong amount would be deemed correct as a matter of law." ECF No. 21, PageID.350.

If Plaintiff's allegations are found to be true, it is clear that Plaintiff would have suffered a concrete harm from the violations of the FDCPA.[2] First, it is clear that a garnishment letter containing incorrect information about the amount owed is a violation that the FDCPA was designed to prevent. It is well established that Congress passed the FDCPA to address abusive and unfair debt collection practices. *See Buchholz*, 946 F.3d at 870. One of the problems the FDCPA was designed to eliminate was "the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer already paid." *Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 508 (6th Cir. 2007) (quoting *Swanson v. S. Or. Credit Serv., Inc.*, 869 F.2d 1222, 1225

---

[2] As discussed in *Macy*, the Court's task is to "merely determine whether Plaintiffs' complaint adequately establishes standing such that they are entitled to an adjudication of their asserted claims." 897 F.3d at 759. Therefore, the Court's analysis does not evaluate the merits of Plaintiff Nettles's claims.

(9th Cir.1988) (quoting S. REP. No. 95–382, at 4 (1977), reprinted in 1977 U.S.C.C.A.N). 1695, 1699). *See also Roe v. Roosen, Varchetti & Oliver, PLLC*, No. 18-cv-13536, 2019 WL 2523589, at *2 (E.D. Mich. June 19, 2019) ("A House report noted Congressional intent to regulate collection activities based on either 'mistaken identity or mistaken facts.'"). It is clear that Plaintiff has alleged a violation of the FDCPA that Congress intended to protect against as the garnishment letter contained the purportedly incorrect amount of the total judgment, the accrued interest, and the unsatisfied judgment—which failed to take into account payments Plaintiff had previously made. *See* ECF No. 1-2, PageID.16.

Having determined that Congress intended to protect against the mistaken facts contained in the garnishment letter, the Court must now determine whether Plaintiff adequately alleged that Defendant Midland violated the FDCPA in a way that caused her concrete harm. *See Buchholz*, 946 F.3d at 863. Defendant's issuance of a state court garnishment presents a risk of harm to the FDCPA's goal of preventing the collection of incorrect amounts of debt. The misstatement of the amount of debt actually owed could cause a consumer to misunderstand their obligations and result in the collection of more money than legally owed. This conduct clearly would place the consumer at a greater risk of falling victim to the abusive practices that Congress intended to stop. *See Macy*, 897 F.3d at 758. More than a "bare procedural violation," the conduct alleged by the Plaintiff—"attempting to collect debts which the

consumer already paid"—is precisely the type of harm that the FDCPA was designed to prevent. *Spokeo*, 136 S. Ct. at 1549; *Macy*, 897 F.3d at 760

Additionally, Plaintiff Nettles alleges that as a result of the letter she incurred additional economic harm because she had to hire legal counsel to object to the amount contained in the garnishment. ECF No. 21, PageID.349. The payment of attorney's fees to retain counsel to object to the amount stated in the garnishment, and ensure she was not required to pay more than she legally owed, constitutes a real harm. *See Loewe v. Weltman, Weinberg & Reis Co., L.P.A.*, No. 19-12187, 2020 WL 409655, at *4 (E.D. Mich. Jan. 24, 2020) (finding that legal costs incurred by the plaintiff to contest an allegedly invalid debt constituted "actual" and "real" injuries); *Cf. Galea v. Midland Credit Mgmt. Inc.*, No. 20-cv-10259, 2020 WL 905747, at *2 (E.D. Mich. Feb. 25, 2020) (finding the plaintiff lacked standing where she did not "allege that she owe[d] the subject debt" or that "she took any action as a result of the letter."). Had the garnishment letter correctly stated the amounts owed in alignment with the consent judgment and Plaintiff's previous payments, she would not have had reason to expend money to hire an attorney.

In sum, Plaintiff's allegations that (1) the incorrect debt amounts created a material risk of harm that Congress had intended to protect against and, (2) that she suffered additional economic harm because she had to hire legal counsel to object to the incorrect amount, are sufficiently

12

traceable to Defendant Midland's purported failure to comply with the FDCPA. Because Plaintiff sufficiently alleged that she suffered a concrete and particularized injury which is fairly traceable to the Defendant's conduct, she has met the concreteness prong of the injury in fact requirement for standing.

While Defendant Midland acknowledges that *Macy* and *Donovan* "could be read to confer" standing, they also contend that if the Court were to follow the reasoning expressed in *Casillas, Hagy, Buchholz*, and *Newman* then standing would be lacking because there is "no allegation that Nettles suffered an actual injury" due to receipt of the garnishment form and there is no "imminent risk" of future harm stemming from receipt of the form. *See* ECF No. 20, PageID.344. The Court disagrees for several reasons.

First, Defendant's reliance on *Hagy* and *Buchholz* is misplaced because the facts in both cases are distinguishable from what is alleged in Plaintiff's complaint. In *Hagy*, the letter plaintiffs received released them from a debt obligation and the Court found that rather than causing an injury, the letter in fact brought Plaintiff peace of mind. 882 F.3d at 621. Here, far from bringing any peace of mind to Plaintiff or releasing her from any obligation, the garnishment letter allegedly sought to inform Plaintiff that she owed *more* money than what had been previously been agreed upon. The potential for harm is evident when

considering that the state garnishment letter purported to increase Plaintiff Nettle's obligation as opposed to relieve or even decrease it.

Similarly, the court in *Buchholz* determined the plaintiff did not have standing because he failed to allege *any* harm that came from the alleged procedural violation and the "bare allegations of anxiety" on their own were not sufficient to allege an injury in fact. 946 F.3d at 864, 870. In its opinion, the Sixth Circuit clearly stated that plaintiff "does not dispute that he owed the debts, nor does he allege that [the debt collector's] letters contained any inaccuracies," and that the anxiety he alleges was not because of anything in the letter. *Id*. at 867. The complete opposite situation is currently before this Court. Here, not only does Plaintiff Nettles dispute the amount owed and allege that the letters contain inaccurate numbers, her decision to hire legal counsel to object to the contents of the letter is clearly traceable to the content of the letter itself. This was no "speculative fear," because a garnishment letter alleging an inaccurate amount of debt owed would lead Plaintiff to believe that collection of an improper amount or litigation was "certainly impending." *Buchholz*, 946 F.3d at 865.

Nor does the Court accept Defendant's argument that the reasoning outlined in *Newman v. Encore Capital Group* would lead this Court to find Plaintiff Nettles does not have standing. No. 16-cv-11395, 2017 WL 3479510 (E.D. Mich. Aug. 14, 2017). The district court in *Newman* found that the plaintiffs lacked standing where they failed to allege that the

14

purported false information they received in documents from a debt collector "caused them *any* harm—much less harm that the FDCPA was designed to prevent." *Id.* at *7 (emphasis in original). This is clearly distinguishable from the facts currently before this Court where Plaintiff has outlined at least two harms. In fact, the district court in *Newman* specifically points out that plaintiffs failed to "plead in the Amended Complaint that they personally incurred any legal costs (or any other mitigation costs) in defending the state court collection suits," whereas Plaintiff Nettles expressly notes in her complaint that she hired an attorney for the purposes of objecting to the allegedly incorrect information. 2017 WL 3479510 at *7, n. 3. Additionally, the district court's decision in *Newman* was decided before the Sixth Circuit provided its guidance in *Macy*.

Finally, the Court declines to apply the case law from the Seventh Circuit to this this issue—specifically, *Nettles v. Midland Funding*, 983 F.3d 896 (7th Cir. 2020) and *Casillas v. Madison Avenue Associates, Inc.*, 926 F.3d 329 (7th Cir. 2019)—because out of circuit case law is not binding upon this Court. *See Hall v. Eichenlaub*, 559 F.Supp.2d 777, 782 (E.D. Mich. 2008). It is well settled law that "a district court is bound by the decisions of the Circuit Court of Appeals in which it sits." *Id*. As recognized by both parties' briefing, there is an unresolved circuit split between the Seventh and Sixth Circuit concerning whether an alleged violation of the FDCPA is itself enough to create standing. *See Nettles*,

983 F.3d at 900, n.3 ("[I]n *Casillas* we explicitly rejected *Macy* as inconsistent with *Spokeo*, acknowledging that in doing so, we created a circuit split."). Even if this Court disagreed with the decision in *Macy*, we are not "at liberty to reverse the circuit's precedent," and therefore must follow the guidance outlined by the Sixth Circuit. *Hall*, 559 F.Supp.2d at 782. Accordingly, *Nettles* and the "no harm, no foul" standard articulated in *Casillas* have no impact on this Court's decision because the Sixth Circuit has spoken on this issue.

In sum, contrary to Defendant's arguments, Plaintiff has sufficiently alleged that she suffered a concrete and particularized injury which is fairly traceable to the Defendant's conduct. In this case, Plaintiff alleges that the garnishment letter at issue would require her to pay more on her debt than she legally owed—a harm in and of itself—and required her to incur tangible costs for obtaining legal counsel to object to the garnishment. Accordingly, Plaintiff has met the requirements of Article III standing and may proceed with her complaint.

## III.    ARBITRATION

Having affirmed that Plaintiff has standing, the Court now turns to Defendant Midland's motion to compel arbitration. ECF No. 13.

### a.    Standard of Review

The Federal Arbitration Act ("FAA") "embodies the national policy favoring arbitration and places arbitration on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443

16

(2006) (citing 9 U.S.C.A. § 2 (West)). While the FAA establishes a liberal federal policy that favors arbitration agreements, arbitration is "a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs. V. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986).

Prior to compelling an unwilling party to arbitrate, "the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Richmond Health Facilities v. Nichols*, 811 F.3d 192, 195 (6th Cir. 2016) (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). And, "[b]ecause arbitration agreements are fundamentally contracts," courts "review the enforceability of an arbitration agreement according to the applicable state law of contract formation." *Tillman v. Macy's, Inc.*, 735 F.3d 453, 456 (6th Cir. 2013) (quoting *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007). Therefore, the Court will apply Michigan law to any general state law principles that govern the formation of contracts.

### b.   Analysis

### i.   Arbitration Agreement

As an initial matter, the Court concludes that the parties agreed to arbitrate. After opening a credit card account, Plaintiff Nettles entered into an agreement which provided that "any controversy or dispute be

resolved by binding arbitration." ECF No. 13-3. Plaintiff offers no opposition[3] to the existence of an arbitration agreement and even concedes that she asserted the right to arbitrate as a defense during the state court proceedings. ECF No. 17, PageID.289. Upon review of the Credit Card Agreement, its Arbitration Clause, and the clauses relating to assignment and survival, the Court concludes that there is a valid arbitration agreement between the parties. *See* ECF No. 13-3.

### ii. Scope of Arbitration Agreement

The key issue before the Court is the scope of the arbitration agreement—specifically, whether the arbitration agreement covers Plaintiff's current claims regarding the garnishment letter. Defendant argues that the broadly drafted arbitration clause covers any disputes regarding the credit card account and collection matters related to it. ECF No. 13, PageID.132-33. Defendant contends that Plaintiff's claims related to the garnishment letter—arising from Plaintiff's failure to pay the debt owed on the credit card account—are within the scope of the arbitration agreement. Plaintiff, however, asserts that the arbitration agreement does not cover collection matters rising under the consent judgment, which form the basis for her claims. ECF No. 17, PageID.287. Rather, according to Plaintiff, the parties expressed their intent to

---

[3] Plaintiff asserts that she objects to the existence of an agreement, but provides no basis or evidence to support this assertion. *See* ECF No. 17, PageID.287. Instead, her arguments relate to the scope of the agreement and will be addressed under the second prong of the Sixth Circuit's test.

resolve any issues through the consent judgment, which is a "separate and distinct contract to be approved and enforced by the state court judge" and does not contain an arbitration provision. ECF No. 17, PageID.295.

"[A] party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)). However, the Sixth Circuit has made clear that where "an arbitration clause is broadly written, 'only an express provision excluding a specific dispute, or "the most forceful evidence of a purpose to exclude the claim from arbitration," will remove the dispute from consideration by the arbitrators.'" *Watson Wyatt & Co., SBC Holdings, Inc.*, 513 F.3d 646, 650 (6th Cir. 2008) (internal citations omitted). *See also Solo v. United States Parcel Serv. Co.*, 947 F.3d 968, 973 (6th Cir. 2020).

The Arbitration Clause in the Agreement is "broadly written" because it requires that "any controversy or dispute" between Plaintiff Nettles and Credit One Bank, its successors, and assignees be submitted to arbitration. ECF No. 13-3. *See Watson Wyatt & Co.,* 513 F.3d at 650 (Finding that the arbitration agreement was "broadly worded in that it applie[d] to 'any dispute or claim arising from or in connection with this agreement or the services provided by [the plaintiff]."). The arbitration provision also includes claims relating to "any disclosures or other

19

documents or communications relating to [the] account," "billing, billing errors," "collections matters relating to [the] account," and claims based on "any contract, statute" or "theory of law." ECF No. 13-3. Additionally, the agreement specifies that it shall survive "any transfer or assignment of your account, or any amounts owed on your account, to any other person." ECF No. 13-3. Here, notwithstanding Plaintiff's argument to the contrary, the arbitration clause is broad enough to cover Plaintiff's claims.

It is evident that the consent judgment and Plaintiff's subsequent claims arose out of the debt that Plaintiff owed on her credit card account. These issues are both covered by the broad language of the arbitration provision ("any controversy or dispute"), as well as enumerated through specific examples ("collections matters relating to your account"). Additionally, when determining whether an issue is within the scope of an arbitration provision, the Sixth Circuit has determined that a "proper method of analysis . . . is to ask if an action could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement." *Fazio v. Lehman Bros.,* 340 F.3d 386, 395 (6th Cir. 2003). There is no way to discuss the consent judgment—specifically the proper amount of debt owed—without reference to the Plaintiff's credit card account and the assignment of the debt. *See Novak v. JP Morgan Chase Bank, NA*, No. 06-14862, 2008 WL 907380, at *9 (E.D. Mich. Mar. 31, 2008) (finding the plaintiff's federal

claim "cannot be maintained without reference to their account and their relationship with [d]efendant."). Because Plaintiff is unable to maintain her action without reference to her account and therefore the agreement it was created under, her claims are covered by the arbitration clauses.

Plaintiff appears to argue that because an "account" is not a "consent judgment," the claims relating to the consent judgment are outside the scope of the arbitration request. ECF No. 17, PageID.291. But, the Court cannot find any support for this interpretation. When alleging that a claim falls outside the scope of a broadly written arbitration agreement, there must be "express provision[s] excluding a specific dispute." *Watson, Wyatt & Co.*, 513 F.3d at 650 (noting that the Sixth Circuit "has also stated that broadly written arbitration clauses must be taken at their word and extend to situations that fall within their purview."). Plaintiff fails to direct the Court to any such provisions. *See also AT & T Techs.*, 475 U.S. at 650 ("In such cases, '[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'") (internal citations omitted). Despite Plaintiff's attempts to distinguish this as a dispute arising under a wholly separate consent judgment, the Court is unable to see how the instant dispute does not fall into the expansive category of "any dispute." *See Altobelli v. Harmann*, 499 Mich. 284, 303 (2016) ("In considering the

gravamen of plaintiff's complaint, we examine the entire claim, looking beyond procedural labels to determine the exact nature of the claim.").

Plaintiff directs the Court to *Nettles v. Blatt, Hasenmiller, Leibsker & Moore LLC*, No. 18-cv-7766, 2019 WL 4750297 (N.D. Ill. Sept. 30, 2019) (hereafter "Nettles I") and *In re Cognate Cases*, No. 1:13-CV-1338, 2014 WL 2933230 (W.D. Mich. June 30, 2014) to support her contention that the consent judgment is outside the scope of the agreement. But, this reliance is misplaced. Even if the decision in *Nettles I* had not been vacated and remanded by the Seventh Circuit's opinion, it has no binding authority on this court and applied case law from the Seventh Circuit in reaching its decision. *See Nettles*, 983 F.3d at 900. In *In re Cognate*, the case is distinguishable because the parties failed to produce an operative, authenticated written arbitration agreement and so there was no specific language for the court to examine. 2014 WL 2933230, at *3. The court went on to determine that even if an arbitration clause like those included in exemplar copies were actually in effect, it was "still limited in one critical respect: namely, it cover[ed] only the claims 'arising from or relating to [the cardmember agreement], or the relationships which result from [the cardmember agreement].'" *Id*. This is distinguishable from the facts presently before this Court. Not only is this Court able to examine the particular terms of the arbitration agreement, but the agreement is not limited in the same "critical respect" because it extends to "any controversy" between Plaintiff and Credit One Bank's successors

and explicitly notes that the arbitration provision shall survive "any transfer or assignment of your account, or any amounts owed on your account, to any other person." ECF No. 13-3.

Plaintiff also contends that the consent judgment is the "only contract at issue here" and it is a breach of this binding contract that gives rise to Plaintiff's claims. ECF No. 17, PageID.293. The Court finds no evidence to support this argument. While it is true the consent judgment does not contain an arbitration provision, it also does not contain any language indicating that the previous terms of the arbitration agreement are to be set aside or any language which contradicts that which is contained in the credit card agreement. *Cf. Omnicom of Michigan v. Giannetti Inv. Co.*, 221 Mich. App. 341, 347 (Mich. Ct. App. Jan. 31, 1997) (noting that under Michigan contract principles, "[i]f parties to a prior agreement enter into a subsequent contract that completely covers the same subject," but the second agreement contains inconsistent terms with the prior agreement, "the later document supersedes and rescinds the earlier agreement."). In some circumstances, even termination of a contract does eliminate the duty to arbitrate. *See also Aspero v. Shearson Am. Exp., Inc.*, 768 F.2d 106, 108 (6th Cir. 1985) ("Although it is created by contract, the duty to arbitrate does not necessarily end when the contract is terminated."). The Court is unable to find that the consent judgment implies an intent to extinguish the agreement to arbitrate when the credit card agreement expressly sets

23

forth a survivorship clause and—beyond "any dispute"—states that issues of collection are a subject for arbitration.

In sum, Plaintiff's dispute falls within the scope of the broadly crafted arbitration clause in the Agreement. Plaintiff's claims are inextricably tied with the credit card account and collection because the dispute centers on the remaining debt Defendant Midland is legally entitled to collect. Such disputes are covered under the "any dispute" language of the arbitration provision.

### c.    Waiver or Forfeiture of Right to Arbitrate

Plaintiff also asserts that Defendant Midland waived its right to arbitrate when it removed the case from state court and answered the complaint without first moving to compel arbitration. ECF No. 17, PageID.297. Due to the "strong presumption in favor of arbitration, waiver of the right to arbitration is not to be lightly inferred." *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 573 (6th Cir. 2003). "[A] party may waive an agreement to arbitrate by engaging in two courses of conduct: (1) taking actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) 'delaying its assertion to such an extent that the opposing party incurs prejudice.'" *Hurley v. Deutsche Bank Tr. Co. Americas*, 610 F.3d 334, 338 (6th Cir. 2010). Neither situation applies here.

First, Defendant's removal of this case from state court may not be considered "completely inconsistent with the arbitration agreement"

because the Sixth Circuit is clear that "[r]emoval to federal court does not waive a party's otherwise enforceable right to arbitrate." *Andrews v. TD Ameritrade, Inc.*, 596 F. App'x 366, 371 (6th Cir. 2014) (citing *Dantz v. Am. Apple Grp., LLC*, 123 F. App'x 702, 707 (6th Cir. 2005)). Next, although Plaintiff's provide no authority[4] to support this contention, Plaintiff claims Defendant must assert the right to arbitration as an affirmative defense under Rule 12(b)(3) or "include it in a responsive pleading, i.e. the answer." ECF No. 17, PageID.301. Assuming for the sake of argument that this argument was supported by authority, Defendant did seek to preserve their arbitration rights in the answer. The very first line of Defendant's answer and affirmative defenses states, "[s]ubject to and without waiving their right to compel arbitration." ECF No. 3, PageID.74. *See also* ECF No. 3, PageID.87 ("Plaintiff's claims are subject to binding arbitration agreements in which she also waived any right to bring her claims as a class action."). It can hardly be said that Defendant waived or forfeited the right to arbitration when the issue was expressly raised in its very first filing just seven days after the complaint was removed to federal court. *See Crossville Med. Oncology, P.C. v. Glenwood Sys., LLC*, 310 F. App'x 858, 859 (6th Cir. 2009) (finding that Defendant's actions were not inconsistent with its right to arbitrate when

---

[4] At the end of their argument, Plaintiff directs the Court to *Worldsource Coil Coating, Inc. v. McGraw Constr. Co.*, 946 F.2d 473, 477 (6th Cir. 1991). But *Worldsource* explicitly analyzes the right to arbitration under Illinois law and makes no reference to Rule 12(b)(3).

it filed an answer, counterclaim, responded to two motions, and filed a motion to extend the discovery deadline); *Cf. Johnson Assoc. Corp. v. HL Operating Corp.*, 680 F.3d 713, 718 (6th Cir. 2012) ("Regardless of whether a defendant is required to raise arbitration as a defense under Rule 8(c), a defendant's failure to raise arbitration as an affirmative defense shows his intent to litigate rather than arbitrate. The filing of an answer is, after all, the main opportunity for a defendant to give notice of potentially dispositive issues to the plaintiff; and the intent to invoke an arbitration provision is just such an issue.").

Accordingly, the Court finds that Defendant Midland did not waive or forfeit its right to arbitration.

### d.   Judicial Estoppel

Finally, Plaintiff asserts that Defendant Midland should be judicially estopped from compelling arbitration because Defendant sued Plaintiff in state court under an account stated claim rather than under a breach of contract theory. ECF No. 17, PageID.301. Plaintiff contends that Defendant's bringing of such a lawsuit should activate the doctrine of judicial estoppel because Defendant Midland "disavowed" the Credit One contract in order to pursue its claims in state court with a lesser evidentiary burden. Again, the Court finds no support for this argument.

"Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich*, 530 U.S. 211,

227, n. 8 (2000). But, there is no evidence that Defendant Midland disavowed the agreement or that the state court made any findings that the arbitration clause was invalid. Despite Plaintiff's references to various Michigan state laws and cases, the Court finds nothing in Defendant Midland's arguments in the previous state court proceedings to demonstrate that it disavowed the contract or took some position in conflict with any argument presented in the current motion to compel. The Court must reject Plaintiff's judicial estoppel argument because Plaintiff fails to identify any "clearly inconsistent" position. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001).

## CONCLUSION

Accordingly, it is **ORDERED** that Defendant's motion to compel arbitration (ECF No. 13) is **GRANTED**. The dispute shall be submitted to arbitration in accordance with the credit card agreement.

It is further **ORDERED** that to avoid administrative difficulties the Clerk of the Court shall **CLOSE** this case for statistical purposes only. Nothing in this order or in the related docket entry shall be considered dismissal of this matter.

It is further **ORDERED** that either party may apply to the Court to reopen the matter for the purpose of enforcing, confirming, or vacating, as appropriate, the arbitral award.

It is further **ORDERED** that this Court retain jurisdiction to review and enforce or vacate the arbitral award.

27

**SO ORDERED.**

Dated: March 30, 2021     s/Terrence G. Berg
_____
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE